**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORKENS PIERRE, | Civil Action No. |
| Petitioner, | 08-6286 (PGS) |
| v. | **O P I N I O N** |
| MICHAEL MUKASEY, et al., | |
| Respondents. | |

**APPEARANCES:**

    NORKENS PIERRE, Petitioner pro se
    Agency No. A045861712, Facility No. 207989
    Hudson County Correctional Center
    Kearney, New Jersey 07032

**Peter G. Sheridan**, District Judge:

On December 19, 2008, Petitioner NORKENS PIERRE (hereinafter "Petitioner"), a native of Haiti who entered the United States in 1997, filed the instant Petition for a Writ of Habeas Corpus (hereinafter "Petition"), pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security (hereinafter "DHS")[1] at the Hudson County Correctional Center.

---

[1] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security. See 6 U.S.C. § 271(a). The Act transferred the functions of the Commissioner of the Immigration and

For the reasons set forth below, the Court will deny the Petition.

## BACKGROUND

According to the Petition, on March 13, 2006, Petitioner -- a Haitian citizen having permanent residency in the United States -- was convicted in the New Jersey Superior Court on the charges constituting a removable offense.[2] See Pet. at 3. Petitioner asserts that "[o]n . . . April 29, 2008[, his] Immigration Judge . . . found [P]etitioner removable . . . ." See id. at 3. "Petitioner appealed [this determination to the Board of Immigration Appeals ("BIA")] on June 3, [2008, but] on June 18, [2008] withdrew [his application to the BIA]." From this fact, Petitioner deduces that "he has been subject to removal since that day," i.e., since June 18, 2008. See id.

---

Naturalization Service ("INS") to the Director of BCIS, see 6 U.S.C. § 271(b), and abolished INS. See 6 U.S.C. § 291. Accordingly, DHS replaced INS on March 1, 2003.

[2] The Petition does not specify the charges upon which Petitioner was convicted in New Jersey state courts. See generally, Pet. However, one of many exhibits Petitioner attached to his Petition is Petitioner's brief filed, apparently, during Petitioner's proceedings before his immigration judge. See Pet. at 26-33. The brief, siting the New Jersey Superior Court, indicates that Petitioner was convicted on the charges of "possession of controlled dangerous substance with intent to distribute, to wit: cocaine, in violation of N.J.S. 2C:35-5(b)(3)" and sentenced to five-year term. See id. at 28. Therefore, it appears that Petitioner was convicted on aggravated felony charges. See id. at 31 conceding that a violation of N.J.S. 2C:35-5(b)(3) constitutes an aggravated felony).

However, on August 7, 2008, Petitioner filed a motion with the BIA seeking reinstatement of his appeal from his immigration judge's decision. See id. at 10. The BIA considered Petitioner's motion and denied it on both procedural grounds and substantive merit.[3] See id. at 10-11.

Petitioner now asserts that, in view of the government's inability to remove Petitioner to Haiti during six months counted from June 18, 2008, that is, the date of his initial withdrawal of his appeal to the BIA, Petitioner is illegally confined. See id. at 5-6. (apparently relying on Zadvydas v. Davis, 533 U.S. 678, 700-701 (2001), and related cases).  In addition, Petitioner asserts that his due process rights are being violated because the DHS, allegedly not a neutral and impartial decision-making body, has been denying Petitioner's requests for release from confinement. See id. at 6-7.

## JURISDICTION

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter

---

[3] Petitioner did not reflected the fact of motion to reopen filed with the BIA nor that of BIA's September 8, 2008 denial of his motion in the body of his Petition, although these facts are reflected in the exhibits Petitioner attached to instant application. See Pet. at 10-11 (replicating the BIA's decision) and Pet. At 4 (replicating Petitioner's letter to DHS)

jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody,"; and (2) the custody could be "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the instant Petition under § 2241 because Petitioner is detained within its jurisdiction and he asserts that his detention is not statutorily authorized and violates his constitutional rights.

### STANDARD OF REVIEW

Pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### DISCUSSION

**I. APPLICABLE LEGAL REGIME**

**A. Removal Period and Its Triggering Events**

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. Detention during the removal period under Section 1231(a)(1)(A) is mandatory and, in addition, § 1231(a)(1)(C)

provides that the removal period shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

The "removal period" starts on the latest of the following: (1) the date when the order of removal becomes administratively final (that is, appeal to BIA was either ruled upon by the BIA or the time to appeal to the BIA expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from confinement. See 8 U.S.C. § 1231(a)(1)(B).

If – during the period of removal triggered by the then-latest of the three above-listed events applicable to a particular alien -- the alien is subjected to a qualifying superceding event, e.g., the alien is released from confinement, or if this alien is detained on a new charge, or the alien files an appeal challenging his/her order of removal, such superceding event start the alien's removal period anew. See 8 U.S.C. § 1231(a)(1)(B).

> [Indeed, there cannot] be ["]only one["] removal period[:] . . . that is the only rational reading of the statute. . . . [T]he statute provides that the removal period begins on the latest of several dates. The passing of one date does not stop the operation of the statute. In a sense, the only way to apply the statute to a given situation is retrospectively. That is, the removal period begins when the removal order becomes

> final. If a court issues a stay, the removal period begins [anew] when the stay is lifted [or when such new appellate proceeding ends]. Therefore, the only way to determine when the removal period begins, or began, is to look at what events already have occurred. If there is another [potential triggering] event, there is another potential beginning date for the removal period. The only sensible reading of this provision is that [DHS] is required to effectuate the removal within 90 days of certain events, but [DHS] will have another 90 days if another one of the [statutorily-]designated events occurs at a later date. The obvious reason for this is that [DHS]'s authority to effect the removal is suspended due to the occurrence of the later event.

Michel v. INS, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000); accord Morena v. Gonzales, 2005 U.S. Dist. LEXIS 37989, at *18 (M.D. Pa. Oct. 4, 2005); Atkinson v. INS, 2002 U.S. Dist. LEXIS 11335, at *5 (E.D. Pa. June 25, 2002); Marcelus v. INS, 2002 U.S. Dist. LEXIS 795, at *6 (E.D. Pa. Jan. 16, 2002); Dunbar v. Holmes, 2000 U.S. Dist. LEXIS 17048, at *6-7 (E.D. Pa. Nov. 28, 2000).

### B. Zadvydas Period

While, during the 90-day "removal period," the alien must be detained, see id. § 1231(a)(2), after the 90-day removal period, the government may further detain the alien or release him subject to conditions of release. See id. § 1231(a)(6). However, in Zadvydas, the Supreme Court held that aliens may be detained further under § 1231(a)(6), although only for "a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689 (holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to

bring about that alien's removal from the United States [and] does not permit indefinite detention").

Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention." Id. at 700-01. However, coining this "presumptively reasonable period of detention," the Supreme Court stressed that,

> [a]fter this 6-month period, o[nly if] the alien provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. *This 6-month presumption, of course, does not mean that every alien not removed must be released after six months*. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701 (emphasis supplied).

## II. PETITIONER'S CONFINEMENT IS PROPER

Here, Petitioner asserts that his Zadvydas period should be deemed triggered on June 18, 2008, that is the date when Petitioner initially withdrew his appeal to the BIA. See Pet. at 4-6. Adding six months to June 18, 2008, Petitioner arrives to the date of December 18, 2008, and asserts that the government's failure to either remove him to Haiti or release him as of December 18, 2008, violated Petitioner's rights.

Petitioner errs. Petitioner's August 7, 2008, filing of his motion seeking reinstatement of his BIA appeal rendered Petitioner-selected Zadvydas period (triggered on June 18, 2008, that is, on the day Petitioner allegedly withdrew his BIA appeal) superceded. The day when Petitioner's next Zadvydas period began to run was September 8, 2008, i.e., the day when the BIA dismissed Petitioner's motion on procedural and substantive grounds.[4]

Since Petitioner's current Zadvydas-based presumptively

---

[4] The very fact that the BIA dismissed - rather than granted - Petitioner's motion is of no effect on this Court's analysis since the DHS's power to remove Petitioner while the motion was pending was just as suspended as it was during the time when Petitioner's initial appeal was pending with the BIA prior to his withdrawal: the DHS had no more ability to predict whether the BIA denies or grants the motion that it had the ability to predict how the BIA would rule on Petitioner's appeal before it was withdrawn. Indeed, Petitioner's initial appeal with the BIA was filed outside of the allocated 30-day period to appeal, but that fact was not preventing the BIA from granting him equitable tolling and his appeal. With the same token, nothing was preventing the BIA from granting Petitioner's motion to reopen his appeal, and the very fact that the BIA reviewed the merits of Petitioner's claim while addressing his motion to reopen renders the BIA's decision on Petitioner's motion indistinguishable, in all substantive respects, from any ordinary BIA decision. Finding otherwise would create an anomalous legal regime allowing an alien to keep filing and withdrawing BIA appeals, hence paralyzing DHS's ability to remove the alien, and then - after six months of such filings and withdrawals, assert that the alien's Zadvydas-based rights were violated because DHS did not succeed in removing the alien during the brief gaps between the aliens filings and withdrawals. See Pelich v. INS, 329 F.3d 1057 (9th Cir. 2003) ("Zadvydas does not save an alien who [asserts violation of his right on the basis of mere passage of six months]. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock").

reasonable period of detention began to run on September 8, 2008, see 8 U.S.C. § 1231(a)(1)(B), Petitioner's current <u>Zadvydas</u> period is to expire on or March 8, 2009, that is, after the date of this Opinion and accompanying Order. See <u>Zadvydas v. Davis</u>, 533 U.S. at 701. Therefore, Petitioner current detention is fully lawful, and his claim based on the fact of his detention should be dismissed.[5]

### III. PETITIONER'S DUE PROCESS RIGHTS WERE NOT VIOLATED

Here, Petitioner asserts that DHS has violated his rights by failing to be an impartial decision-making body. However, Petitioner neither states any facts suggesting that he was denied a six-month review of his case nor does he assert any fact suggesting bias on the part on DHS: his assertion is entirely based on the sole fact that he was denied release and his self-serving opinion that he should have been released. However, the mere fact that a litigant does not obtain the relief he desires cannot indicate partiality of the decision-maker. "To sustain a claim of [decision-maker's misconduct], there must be an extremely high

---

[5] If Petitioner is not removed to Haiti by March 8, 2009, Petitioner may file another § 2241 petition and shift the burden to the government (that is, obligating the government to show feasibility of Petitioner's removal) if Petitioner's next petition states more than his bald conclusion that his removal is not foreseeable; rather Petitioner would have to demonstrate that "the circumstances of his status" or the existence of "particular barriers to his repatriation" to his country of origin are such that there is no "significant likelihood of removal in the reasonably foreseeable future." See, e.g., <u>Fahim v. Ashcroft</u>, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002).

level of interference by the [decision-maker] which creates a pervasive climate of partiality and unfairness." Duckett v Godinez, 67 F.3d 734, 740 (9th Cir. 1995) (internal quotations and citation omitted). To obtain habeas corpus relief on a challenge based on decision-maker's misconduct, the petitioner must show actual bias, i.e., that the decision-maker treated him unfairly. See Johnston v. Love, 940 F. Supp. 738, 754 (E.D. Pa. 1996), aff'd, 118 F.3d 1576 (3rd Cir.), cert. denied, 522 U.S. 972 (1997). In contrast, the petitioner's mere impressions of bias does not establish bias. See id.; see also Withrow v. Larkin, 421 U.S. at 47; United States v. Gallagher, 576 F.2d 1028, 1039 (3d Cir. 1979) (an adverse ruling is not sufficient for the petitioner to make out a claim of the decision-maker's bias). Therefore, Petitioner's due process claim will be similarly dismissed.

## CONCLUSION

For the foregoing reasons, the Petition will be denied.

An appropriate Order accompanies this Opinion.

                                                                          *Peter Sheridan*
                                                              **Peter G. Sheridan**
                                                         **United States District Judge**

Dated: